Charles M. Brodeur, Jr. v. Commissioner.
Brodeur v. Commissioner
Docket No. 20882.
United States Tax Court
1951 Tax Ct. Memo LEXIS 309; 10 T.C.M. (CCH) 228; T.C.M. (RIA) 51068; March 2, 1951
*309 Petitioner paid an attorney's fee of $5,000 and incidental expenses of $409.10 in connection with litigation involving a trust estate of which his wife was the ultimate beneficiary. Held, the payments made by petitioner were not ordinary and necessary expenses of his insurance business under section 23 (a) (1) (A). Charles A. Scharf, Esq., for the petitioner. James R. McGowan, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined a deficiency in the income tax liability of the petitioner for the year 1944 in the amount of $2,086.72. The issue in this proceeding is whether or not the payment by petitioner of attorney's fees and incidental expenses in connection with litigation involving a trust estate of which his wife was the ultimate beneficiary is deductible under section 23 (a) (1) (A). The petitioner no longer contests the disallowance by respondent of another deduction of $500. Petitioner filed his return with the collector for the district of New Hampshire. Findings of Fact The facts which have been stipulated are found as facts. Petitioner has been the sole proprietor of an *310 insurance agency in Nashua, New Hampshire, since 1928. He also operates a travel agency and a small loan business. Petitioner was born in Nashua and has lived there his entire life. Since 1929 the petitioner has written insurance for members of the Catholic clergy and Catholic institutions throughout the State of New Hampshire. During 1944 this insurance constituted an important part of his business, not only because of the volume of insurance written for the church institutions but also because of the enhancement to his reputation among the parishioners from such business. Early in 1941 the petitioner married Violet Daviau, who was the daughter of Arthur Daviau, a widower residing in Waterville, Maine. The newly married couple set up their home in Nashua. After the marriage, Arthur Daviau customarily stayed with his daughter and son-in-law at their home in Nashua during the winter months and returned to Waterville each spring. In June or July of 1943, Arthur Daviau became ill and decided to visit his daughter and son-in-law in Nashua. He remained at their home for two or three months. While he was there, he assigned various securities, war bonds, and insurance policies to his daughter. *311 After he had recovered from his illness, Arthur Daviau returned to Waterville. On February 23, 1944, Arthur Daviau filed a complaint in the Superior Court of Hillsborough County, New Hampshire, against his daughter and son-in-law. The complaint alleged that Arthur Daviau had been promised the right to make his home with petitioner and his wife and that as a consequence Arthur Daviau had sold his house in Waterville; that the petitioner and his wife did not provide such a home; and that the petitioner and his wife had "conspired and connived and in fraud of the rights of [Arthur Daviau] attempted and succeeded in taking from him, without his knowledge and consent, all of his property with the exception of the proceeds from the sale of his home and the sale of his business property in Waterville * * *." The complaint requested that an accounting be made of the securities, war bonds, and insurance policies and that permission be granted to attach the property of petitioner and his wife if it should appear to the court that such an attachment was essential to the preservation of Arthur Daviau's rights. On February 23, 1944, the Superior Court temporarily enjoined the defendants from *312 selling, transferring, or otherwise dealing with the securities and ordered petitioner and his wife to turn over to the clerk of the court the securities, war bonds, and insurance policies which had stood in the name of Arthur Daviau prior to June 1, 1943. The petitioner and his wife turned over to the clerk of the court the assets which had been transferred to Violet Brodeur by her father, including securities, war bonds, insurance policies, and a cashier's check in the amount of $5,878.82. The dispute between Arthur Daviau and petitioner and his wife was settled by an agreement between the parties on March 9, 1944. A copy of this agreement was filed with the Superior Court on March 10, 1944. The agreement provided in part as follows: "It is agreed that all securities, life insurance, cash, and other evidences of indebtedness as conveyed by Arthur Daviau to his daughter, on or about July, 1943, and/or as described in a receipt of the Clerk of the Superior Court of Hillsborough County dated February 24, 1944, be confirmed and approved, and remain the property of the said daughter, Violet Brodeur, forever, subject, however, to the following conditions: "The said F. Harold Dubord *313 and the said Ralph W. Davis are to act as trustees to hold all of said assets, policies, securities, cash, etc. and to pay all the net income therefrom, and so much of the principal thereof as they in their joint judgment feel is necessary and/or warranted for the reasonable comfort and support of the said Arthur Daviau for and during the term of his natural life and upon his decease, to pay the remainder over to his said daughter, free from any and all claims or demands of the said Arthur Daviau and/or of his estate. * * *
"It is agreed by the parties that counsel fees out of the trust estate shall be paid by the trustees in the sum of Ten Thousand (10,000.00) Dollars, one-half thereof, or five thousand ($5,000.00) Dollars, to McLane, Davis and Carlton [carleton], and one-half, or Five Thousand ($5,000.00) Dollars to Alvin Lucier and to F. Harold Dubord jointly to be paid out of said trust forthwith." The Superior Court on March 10, 1944, "ordered, adjudged and decreed that the agreement as filed by the parties be and hereby is the order of the Court." The Superior Court named as trustees of the trust created by the agreement F. Harold Dubord, who had represented Arthur *314 Daviau, and Ralph W. Davis, who had represented petitioner and his wife. The trustees, Davis and Dubord, authorized the clerk of the court to pay from the assets of the trust estate $5,000 to Alvin A. Lucier for the account of Lucier and Dubord and to pay to McLane, Davis & Carleton, "as soon as funds are available," the sum of $5,000 in accordance with the terms of the agreement. The clerk made the payment to Lucier; however, since cash was not available in the trust estate, the payment authorized to be made to McLane, Davis & Carleton was not made at that time. Arthur Daviau died on April 7, 1944, before the assets of the trust estate had been delivered to the trustees. On April 8, 1944, the clerk of the court delivered to Davis, as trustee, the assets of the trust estate. Violet Brodeur, as a defendant in the original action brought by her father and as the ultimate beneficiary under the trust resulting from the settlement of the action, filed a motion with the Superior Court alleging that the original plaintiff, Arthur Daviau, had died on April 7, 1944, and "* * * that at the time of his death the securities and insurance policies which were to be the subject matter of the *315 trust were still in the hands of the Clerk of the Superior Court for the County of Hillsborough; that thereafter said Davis wrongfully caused said securities and insurance policies to be delivered to him by said Clerk; that since then, though requested, said Davis has wrongfully refused to deliver said securities and policies to said Violet Brodeur, the beneficiary entitled thereto under said trust upon the death of said Arthur Daviau. "Your petitioner further says that the only reasons given by said trustees for nondelivery are - (1) Davis' right to payment of $5,000 - which was not a good excuse because defendant offered payment on delivery. (2) The condition in the decree that the securities were not to go out of the state - which has nothing to do with defendant's right to receive them herself. (3) That certain dividends received by defendant prior to the death of plaintiff Daviau have not been turned over to said trustee - which is not an excuse to said trustee for nondelivery of the balance; said defendant, claiming said dividend as hers, offered and now offers to place them in a separate account to await judicial decision on the question of right. (4) That certain *316 State or Federal taxes may be payable with respect to the property belonging to Mrs. Brodeur under the agreement - which is clearly of no concern to said trustees. "WHEREFORE: said Violet Brodeur prays that said Davis and said Dubord be ordered and directed to deliver all of said securities and policies to her forthwith, and for such other and further relief as may be just." The Superior Court treated this motion as a continuation of the original proceeding brought by Arthur Daviau. Soon after Violet Brodeur filed her motion on June 29, 1944, in which she had requested that the trust estate be turned over to her, petitioner was questioned about the charges in the suit which had been brought by his father-in-law by Sister Madeline, who was then president and dean of Riviera College in Manchester, New Hampshire. Petitioner, through his agency, insured all the buildings of Riviera College and also wrote public liability insurance for the college. Petitioner and his wife satisfied Sister Madeline that the allegations in the original suit brought by Arthur Daviau had no basis in fact. Shortly after the discussion with Sister Madeline, Victor Ladeau who owned a large amount of real *317 estate which was insured through the petitioner's agency also requested the petitioner to explain to him the action which had been brought by Arthur Daviau. The petitioner satisfied Victor Ladeau that the allegations in the complaint were not true. On July 12, 1944, the attorney for the trustees filed a motion in which he asked, on behalf of the trustees, that petitioner and his wife be held in contempt of court for their failure to carry out certain provisions of the settlement agreement which had been incorporated in the decree of the court on March 10, 1944. After denying the motion of the trustees that petitioner and his wife be held in contempt of court, the Superior Court entered an order on November 2, 1944, which disposed of the issues raised by the motion of Violet Brodeur and the motion of the trustees. The Superior Court ordered the trustees to turn over to Violet Brodeur all the assets held by them as trustees and not yet surrendered to her; and, after finding that the fee due McLane, Davis & Carleton for the services rendered by Ralph W. Davis had not yet been paid, the Superior Court ordered Violet Brodeur "to pay to Ralph W. Davis forthwith the sum of five thousand *318 dollars in payment of his fee as stipulated in the settlement agreement." The Superior Court ordered that the payment of the $5,000 attorney's fee by Violet Brodeur and the delivery to her by the trustees of the trust assets in their possession be accomplished and receipts filed with the court by November 13, 1944. On November 6, 1944, petitioner paid the fee of $5,000 due McLane, Davis & Carleton for the services rendered by Ralph W. Davis in connection with the suit which had been brought by Arthur Daviau. The payment was made by certified check drawn on petitioner's individual bank account. The assets of the trust estate were thereupon delivered to Violet Brodeur by Davis in his capacity as trustee. Except for her interest in a joint savings account in the amount of approximately $100 which she maintained with petitioner, Violet Brodeur did not possess any money with which to pay the fee due McLane, Davis & Carleton prior to the delivery to her of the trust assets after the fee was paid by petitioner. The securities which Violet Brodeur received from the trust estate were deposited in the Old Colony Trust Company in Boston in her name. These securities had a fair market value *319 of between $90,000 to $100,000 after the death of Arthur Daviau. Petitioner has never exercised, nor has he ever had, any authority over the assets of the trust estate after their delivery to his wife. Petitioner paid the attorney's fee of $5,000 in order to secure the delivery to his wife of the trust estate and because she did not have the cash with which to make the payment. He did not make the payment in order to protect his business reputation. Petitioner paid traveling and incidental expenses of $409.10 on behalf of his wife in connection with the action brought by Arthur Daviau and the settlement of the trust estate. He also paid an attorney's fee of $500 on behalf of his wife in connection with the settlement of the trust estate. Payment of these expenses had no connection with the insurance business conducted by petitioner. Opinion The issue in this proceeding is whether the payment by petitioner of an attorney's fee of $5,000 and incidental expenses of $409.10 in connection with litigation involving a trust estate of which his wife was the ultimate beneficiary constituted ordinary and necessary expenses of the insurance business carried on by the petitioner. The *320 petitioner contends that he made the payments in order to protect his business and his reputation and that such payments are deductible under section 23 (a) (1) (A). Obligations of another which a taxpayer voluntarily assumes and pays are not ordinarily deductible as business expenses. , certiorari denied, ; ; , affirming . However, if the taxpayer can affirmatively show that the payment was directly and proximately related to his business and that it was an ordinary and necessary expense of such business, he may be entitled to deduct the payment under section 23 (a) (1) (A). The statutory language is flexible, and, as was said in : "One struggles in vain for any verbal formula that will supply a ready touchstone. The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle." Even though expenses are unique in the life of a taxpayer, *321 they may still be ordinary when judged by the norms of conduct of the group or community of which he is a part. ; . If the failure to pay the $5,000 fee due McLane, Davis & Carleton was injuring the petitioner's insurance business and if the petitioner made the payment in order to protect his reputation and prevent the loss of earnings that might result from the destruction of the existing good will of his business, such payment would be deductible as an ordinary and necessary business expense. ; ; . The evidence, however, does not show that petitioner's insurance business was being injured by the failure to pay the $5,000 fee due the law firm or that he made the payment in order to protect his business standing and reputation. In February 1944, petitioner's father-in-law, Arthur Daviau, brought suit against petitioner and his wife. He alleged that they had failed to carry out the terms of a verbal *322 agreement whereby he transferred securities, bonds, and insurance policies which he owned to his daughter in exchange for which his daughter and son-in-law promised him the right to make his home with them. The petitioner contends that adverse publicity from this suit was endangering the good will of his insurance business. However, at the time the payment of the lawyer's fee was made, Arthur Daviau had been dead for more than seven months and the suit which he had brought had been settled for more than eight months. Any damage to petitioner's reputation or injury to his business did not arise from the delay in paying the lawyer's fee, but from the claim of Arthur Daviau which had already been settled. Shortly after the complaint was filed, the parties reached an agreement under which the assets that Arthur Daviau had transferred to his daughter were placed in a trust in which he was given a life interest. Upon his death, it was provided that the trust property should be conveyed outright to petitioner's wife. The settlement agreement, which was made part of a court decree, also provided that a fee of $5,000 each should be paid out of the trust estate to both the lawyer who represented *323 Daviau and the lawyer who represented petitioner and his wife. The lawyers were also named as the trustees of the trust estate. The only relation between the payment of the attorney's fee and the original suit brought by Arthur Daviau was that the court decree which embodied the settlement agreement made the payment of the fee a charge on the trust assets, thus encumbering them in the hands of the trustees and in the hands of any tranferee from the trustees. 1 Scott, The Law of Trusts, section 10, pp. 71-6 (1939). Even if petitioner feared damage to his reputation and loss of business from Daviau's charge, he has not shown that the reason he made the payment to Davis was to protect his business. The subsequent litigation between the trustees and petitioner's wife involved a struggle between the remainderman of a trust and a trustee for possession of the trust assets. Davis, as trustee, had the power to pay to his law firm the fee due it, which the court had decreed should be paid out of the trust estate. He had not made such payment prior to the motion brought by the petitioner's wife for delivery to her of the trust assets upon the death of her father because there was not sufficient *324 cash in the trust estate. Payment had been made to the other attorney out of the trust estate. However, Davis, as trustee, refused to surrender the trust assets to petitioner's wife until his law firm received the fee which was due. Payment of this fee was not the obligation of petitioner's wife, and it is immaterial whether or not she refused to pay it. The fee was a charge against the trust estate as a result of the court decree. The subsequent litigation was instituted by petitioner's wife in order to obtain the trust assets. There was no question raised in this litigation concerning the charges which had been made by Arthur Daviau. This litigation was settled by a court decree which ordered that the trust assets should be delivered to petitioner's wife, and that petitioner's wife should pay the lawyer's fee which was a charge against the trust assets. Since petitioner's wife did not possess the necessary cash with which to pay the fee, petitioner made the payment from his own funds in order to obtain the delivery to his wife of the trust estate. Upon such payment being made, the trustee delivered the trust assets into the possession of petitioner's wife. The payment was not made *325 to set at rest any imputation of wrong-dealing by petitioner since Arthur Daviau's charge had already been aired and laid to rest many months before by the filing of the suit by Daviau and its settlement by the parties. It is held that the payment of the attorney's fee of $5,000 was not an ordinary and necessary expense of the insurance business carried on by petitioner. Also, the traveling and incidental expenses of $409.10 which were incurred in the litigation with Arthur Daviau and in the settlement of the trust estate which petitioner paid on behalf of his wife are not deductible by the petitioner as ordinary and necessary expenses of his insurance business. Petitioner has been unable to show any connection between the payment of these expenses and his insurance business, and we have been unable to find any from our examination of the evidence. Petitioner made the payments on behalf of his wife who seemingly did not have the necessary funds with which to pay them at the time they were incurred. Neither the petitioner's business standing nor his reputation was involved in the payment of the incidental expenses, and they are not different in nature from the payment of an attorney's *326 fee in the amount of $500 which the petitioner concedes is not deductible as an expense of his insurance business. The respondent's determinations are sustained. Decision will be entered for the respondent.